UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
KENTUCKY AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                                    CRIMINAL ACTION NO. 3:16-CR-136-CRS

JAMESY HAVENS                                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of the motion of defendant, Jamesy Havens, for compassionate release (DN 257). Havens is incarcerated at the Federal Correctional Center ("FCI") Yazoo City Low where he has served nearly two years of a 70-month prison sentence. FCI Yazoo City Low presently reports 82 inmates who have tested positive for COVID-19.[1] Havens seeks compassionate release as he claims to be at higher risk for developing life-threatening illness from COVID-19 infection.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[2] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[3] As of the

---

[1] *See* BOP.gov/coronavirus/- the BOP's COVID-19 Resource Page, Inmate Test Information by facility.

[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-opening-remarks-at- the-media-briefing-on-covid-19--11-march-2020).

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

date of this writing, there are 10,185,374 confirmed cases worldwide and 503,862 deaths; in the United States, there are 2,537,636 confirmed cases and 126,203 deaths.[4] Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the Court addresses motions for compassionate release, and Haven's motion in particular here, with the gravity of the situation in mind.

Havens received a 70-month prison sentence in June of 2018 for mail fraud and money laundering offenses arising from a scheme with five co-defendants to submit and collect money on fraudulent car loan applications. The amount of the fraud totaled almost $1.5M and victimized numerous lending institutions. Havens had a prior federal conviction involving steroids and was on supervised release for that conviction when the fraud scheme began.

Havens filed his motion for compassionate release after first making a request with the Bureau of Prisons ("BOP"). *See* DN 257, ex. 1 (April 3, 2020 *pro se* letter to Warden); ex. 2 (April 15, 2020 Counsel request to Warden on behalf of Havens). Havens filed his motion for compassionate release with the Court on May 4, 2020 after no response was received from the Warden.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant

---

[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 10, 2020).

has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"

Havens has satisfied the exhaustion requirement of the First Step Act. He properly sought relief from the BOP and, having received no response in 30 days, filed his motion with the Court. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3,[5] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

---

[5] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019);*United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider."
*United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B)  Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D)  Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Havens is 45 years old. He has mixed hyperlipidemia, acid reflux, and sleep apnea. He contends that his physical condition renders him a high risk inmate; that is, that he is more susceptible to a serious illness if he were to contract the COVID-19 virus. This is the sole ground for his assertion of "extraordinary and compelling" circumstances warranting relief.

With respect to Havens' concern that he is more susceptible to adverse outcomes if infected, we find that the case has been somewhat overstated. Havens notes that "[t]he Center for

Disease Control (CDC) states that individuals with heart conditions and moderate to severe asthma are at higher risk for severe complications or death as a result of COVID-19. Cleveland Clinic and Harvard Health also state that people with heart conditions, coronary artery disease and/or high blood pressure are more susceptible to severe reaction if they contract COVID-19." DN 257, p. 3. Taking these statements as true,[6] they are of little help to Havens as he does not contend that he has a heart condition, asthma, coronary artery disease, or high blood pressure.

Rather, Havens has been diagnosed with Mixed Hyperlipidemia which, Havens contends, "contributes to coronary heart disease and early heart attacks." *Id.* He also states that "[k]nown risks associated with Mixed Hyperlipidemia" are various forms of heart disease and stroke. *Id.* Nowhere does Havens contend he has been diagnosed with heart disease. The Court has not found any such diagnosis in the limited medical records provided by the United States. Havens did not provide any medical records for the Court's review. The prison medical records indicate that Havens has been and is presently being treated for Mixed Hyperlipidemia. Logic dictates that this treatment is prescribed to try to avoid the development of heart disease in the future, however there has been no offer of medical evidence to substantiate such a conclusion. The only conclusions the Court can reach based upon the evidence is that Havens has been diagnosed with Mixed Hyperlipidemia and he is being treated for it, and that Havens has not been diagnosed with heart disease.

Similarly, Havens does not contend that he has asthma. Rather, he urges that he "suffers from respiratory problems and has sleep apnea." *Id.* He states nothing more. As of February 12,

---

[6] Havens provides no references in paraphrasing statements purportedly made by the CDC, the Cleveland Clinic and Harvard Health. The Court can, however, take judicial notice of the CDC's published list of underlying medical conditions which place individuals at an increased risk of severe illness from COVID-19 which includes serious heart conditions such as heart failure and coronary artery disease, but does not include high blood pressure or asthma. High blood pressure and moderate to severe asthma are identified by the CDC as conditions which might pose an increased risk for severe illness from COVID-19.

2020, the date of the most recent Clinical Encounter notes provided to the Court, allergic rhinitis and sleep apnea are both listed as "resolved." Nowhere in the medical records dating back as far as June 5, 2019 is there any mention of asthma.

Finally, Havens contends that he "suffers from a severe case of acid reflux and heartburn associated with erosive esophagitis" which "increases an individuals [sic] risk for 'infections caused by viruses.'" (DN 257, p. 2). Havens refers to the 2018 PSR where the probation officer reports that Havens had an endoscopy in February 2018. The probation officer reported the following information: ""[A]n LA Grade C esophagitis with reflux and no bleeding was seen in the lower third of the esophagus, which was compatible with erosive esophagitis…The results were sent to pathology; however, the probation office was not provided with the pathology results. The defendant was prescribed pantoprazole, 40 mg, by mouth twice daily for 60 days." DN 188, p. 22, ¶ 86. On July 10, 2019, the prison medical records indicate he is being treated for "Gastro-esophageal reflux disease without esophagitis." DN 269-2, p. 29. The same indication was repeated on August 9, 2019, August 19, 2019, October 22, 2019, December 31, 2019, and January 8, 2020. *Id.*, pp. 23, 20, 13, 9, 7. On February 12, 2020, Havens was assessed as having esophageal reflux – current; gastro-esophageal reflux disease without esophagitis – resolved; hyperlipidemia – current; sleep apnea – resolved. *Id.*, p. 3.

Havens expresses concern that "erosive esophagitis increases an individuals [sic] risk for 'infections caused by viruses,'" however, there is no evidence that he was diagnosed with erosive esophagitis. While he points to a 2018 endoscopy note that states that an abnormality which was observed was "compatible with" erosive esophagitis, there is nothing in the record to indicate a definitive diagnosis. Havens was treated with pantoprazole. The probation office was not provided with further results. The prison medical records beginning some seventeen months later indicate

gastro-esophageal reflux disease *without* esophagitis. The most recent medical record provided to the court indicates that the gastro-esophageal reflux disease without esophagitis is resolved and he currently suffers from esophageal reflux. *Id.*, at 3. As there is no medical indication that Havens presently has erosive esophagitis, the Court concludes that his concern over an increased risk of infection is not borne out by the record, and his motion for compassionate release must be denied. *See, ie., United States v. Turhani*, 2020 WL 2847182 (N.D.Ohio June 2, 2020)(Petitioner without CDC risk factors denied compassionate release despite COVID-19 outbreak in prison, holding that the existence of a pandemic does not authorize the court to usurp the BOP's authority and empty prisons.).

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Havens' crimes weigh against release from custody. The Court agrees.

Havens has a history of committing crimes while on probation or supervised release. He has state court convictions for Assault 4th Degree and Assault 2nd Degree and a federal conviction for conspiracy to possess with intent to distribute anabolic steroids all occurring within less than a year, August 2007 to June 2008. While on supervised release from the federal conviction, Havens was convicted of menacing in an incident involving a stranger. Again, while on supervised release, Havens and his co-defendants began the fraud and money laundering scheme for which he is currently serving a 70-month sentence. See DN 188, pp. 4; 17-19. Additionally, number of Emergency Protective Orders were issued against him on allegations of domestic violence in 2007,

2012, and 2015. Both Havens' pattern of disregard for the requirements of supervision and his repeated violent conduct counsel that his release from custody would place the public at risk that Havens would reoffend.

Additionally, the sentencing factors were thoroughly and carefully considered in imposing sentence in this case. The nature and circumstances of the offense, the weight of the evidence, Havens' history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by Havens' release were taken into account in reaching the imposition of a 70-month prison sentence about one-third of which has been served. The Court finds no ground to justify any reduction in Havens' sentence, and that a reduction would fail to respect the seriousness of his crimes.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Jamesy Havens, for compassionate release (DN 257) is **DENIED.**

**IT IS SO ORDERED.**

July 8, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc: Counsel of Record